OPINION OF THE COURT
Gabrielli, J.
This case involves the interpretation of four insurance contracts which, coincidentally, provide liability coverage for the same event. In the context in which this case comes to us, we are presented for the first time with the question of whether a contract expressly providing for “excess insurance” in all cases contributes ratably with all other “excess insurance”, or whether an insurer may structure the policy specifically to provide secondary excess coverage *654 that will not be reached until both the primary and other excess policies are exhausted.
On December 27, 1974, Jack Tantleff was involved in an automobile accident in which two of his passengers were injured. The car he was driving was registered in the name of One Eleven South Street Number 2, Inc.
Actions subsequently commenced resulted in a settlement in favor of the first passenger for the sum of $750,000, and in favor of the second passenger for $30,000. Primary insurance had been provided by the Allstate Insurance Company (Allstate) to One Eleven South Street Number 2, Inc., the owner of the car, to the limit of $300,000. This amount was contributed by the primary insurer toward the settlement. Allstate also provided two forms of non-primary insurance in this case, and, along with Lumbermens Mutual Casualty Company (Lumbermens) which also provided a form of nonprimary insurance, agreed to contribute toward the balance of the settlements equally with Lumbermens, while both companies reserved the right to seek a declaration of their rights. This action for a declaratory judgment followed.
The second policy involved on this appeal was issued by Allstate to Judith Tantleff, Jack’s mother. This policy insured Judith’s personal automobile, but also provided that there would be coverage for a relative of the named insured (Judith) if that relative were charged with responsibility for and was involved in an accident while driving a nonowned automobile. However, Judith’s policy also provided that: “If there is other insurance * * * the insurance with respect to a * * * nonowned automobile shall be excess insurance over any other collectible insurance”.
The third policy was issued by Allstate to Jack’s father, Irwin Tantleff, and was denominated an executive policy. It provided that Allstate would be responsible for and pay the “net loss in excess of insured’s retained limit”. The term “retained limit” was then defined as “the sum of applicable limits of underlying policies listed in Schedule A hereof and the applicable limits of any other underlying insurance collectible by the insured”. The policy of insur *655 anee issued to the operator’s mother, Judith, was listed in Schedule “A”. Additionally, this executive policy also provided: “The insurance afforded under this policy shall apply as excess insurance, not contributory to other collectible insurance (other than insurance applying as excess to Allstate’s limit of liability hereunder) available to the Insured and covering loss against which insurance is afforded hereunder”.
The fourth and final policy was a “Catastrophe Policy” issued by Lumbermens to Twin County Grocers, of which One Eleven South Street Number 2, Inc., was a member. It provided for coverage in excess of “any other valid and collectible insurance available to the insured, whether such other insurance is stated to be primary, contributing, excess or contingent”.
In essence, each of the last three-mentioned policies involved in the present appeal provides a form of nonprimary coverage. Allstate urges that these policies simply provide excess insurance, or secondary coverage, and thus all exist at the same level. The general rule is, of course, that where there are multiple policies covering the same risk, and each generally purports to be excess to the other, the excess coverage clauses are held to cancel out each other and each insurer contributes in proportion to its limit amount of insurance (see Federal Ins. Co. v Atlantic Nat. Ins. Co., 25 NY2d 71; Atlantic Mut. Ins. Co. v Atlantic Nat. Ins. Co., 38 AD2d 517, affd 33 NY2d 817). However, this rule is inapplicable to the case before us because its use would effectively deny and clearly distort the plain meaning of the terms of the policies of insurance here involved.
The policy issued by Allstate to Judith was designed to provide excess insurance in the present situation. In contrast, the executive policy issued by Allstate to Irwin, the driver’s father, was not just a simple excess policy, but was designed specifically to provide coverage in excess of that provided by Judith’s policy. The parties to this contract did not bargain for ratable contributions in the event of an accident, but instead contemplated that the executive policy would be summoned and become applicable only after Judith’s policy had been exhausted.
*656 Similarly, the parties to the Lumbermens contract did not bargain for a ratable contribution with any of the Allstate policies. This “Catastrophe Policy” specifically provided coverage in excess of all other coverage available, including excess coverage. Presumably the premiums for this policy reflected the rarity of Lumbermens’ ultimate requirement to contribute to a settlement.
Additionally, we observe that defendant Allstate did not bargain for a single second tier of excess coverage at the time of entering into its contracts. Allstate’s executive policy clearly provided that its policy issued to Judith should be exhausted first. By writing such a provision into its own contract, it now cannot contend seriously that the law always contemplates only a single tier of nonprimary coverage. In fact, in the excess clause of its own executive policy Allstate conceded the possibility that another policy could provide coverage in excess of its coverage.*
The plain meaning of the language embodied within the terms of these contracts compels the conclusion that the rule of ratable contribution is inapplicable in this case. The only interpretation which can be adopted and ultimately concluded from the language of these agreements requires us to hold that the primary insurance having been exhausted, the policy issued by Allstate to Judith Tantleff should next contribute to the settlement. Then, if and when the limits of that policy have been exhausted the executive policy issued by Allstate should be called upon to contribute, and only after the executive policy has been exhausted should the catastrophe policy issued by Lumbermens be summoned into effect.
We note that our holding and departure from the general rule of ratable contribution for multiple excess insurers *657 finds support in the case law of other jurisdictions (see Allstate Ins. Co. v Employers Liab. Assur. Corp., 445 F2d 1278, interpreting Illinois law; Prudential Prop. & Cas. Ins. Co. v New Hampshire Ins. Co., 164 NJ Super 184). Finally, we also observe that to force a ratable contribution among the nonprimary insurers in this case, in contravention to the plain meaning of the insurance contracts, would serve to prevent the insurance buyer from purchasing additional coverage at a premium reduced to reflect the lesser risk to the insurer.
Accordingly, the order of the Appellate Division should be reversed, with costs, and judgment should be granted in favor of plaintiff declaring that its catastrophe policy provides coverage in excess of the coverage provided by the Allstate policies.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Fuchsberg and Meyer concur.
Order reversed, with costs, and judgment granted in favor of plaintiff in accordance with the opinion herein.

 The clause provided, in effect, that Allstate would not contribute with other collectible insurance “other than insurance applying as excess to Allstate’s limit of liability”. This provision admits to the possibility that there may be insurance provided as excess to the coverage under the executive policy, but is ineffective as a means to place all other nonprimary insurance on an equal tier and compel ratable contribution. However, we note in passing that there may be situations where an insurer could provide that it would, in effect, supply only the final tier of coverage, and that all other general final tier policies would have to contribute ratably with it toward any settlement.