PUBLIC SERVICE MUTUAL INSURANCE COMPANY, Respondent, v FIREMAN'S FUND AMERICAN INSURANCE COMPANIES, Defendant, and INSURANCE COMPANY OF NORTH AMERICA, Appellant.

First Department, August 6, 1981

#### APPEARANCES OF COUNSEL

*Neal M. Glazer* of counsel *(Joseph D. Ahearn* and *Michael Majewski* with him on the brief; *Corcoran, Amabile & Cowin,* attorneys), for appellant.

*Alvin P. Bluthman* of counsel *(Nathan Cyperstein,* attorney), for respondent.

#### OPINION OF THE COURT

FEIN, J.

The relevant facts are fairly stated in the dissent, which correctly determines that *Lumbermens Mut. Cas. Co. v Allstate Ins. Co.* (51 NY2d 651, revg 73 AD2d 868), requires us to conclude that the Fireman's Fund American Insurance Companies (Fireman's) policy, although purporting

to be an excess policy with respect to a nonowned vehicle, was required to be exhausted before Insurance Company of North America (INA) could be called upon to contribute, because the Fireman's policy replaced the Cosmopolitan Mutual Insurance Co. (Cosmopolitan) policy listed in the INA policy as underlying insurance with respect to which the INA policy was excess insurance. Although the Cosmopolitan policy has not been made part of the record, it has been stipulated that it was "replaced" by the Fireman's policy upon expiry. However, that is not dispositive.

It is undisputed that the underlying action was settled for $350,000. Statewide Insurance Company (Statewide), the primary insurer of the leased vehicle, paid its policy limit of $100,000 toward the settlement. Public Service Mutual Insurance Company (Public Service) paid the remaining $250,000 and then commenced this action against Fireman's and INA seeking to have them contribute proportionate shares of the $250,000 on the theory that all three policies were excess policies requiring ratable contributions. Fireman's paid Public Service $12,500 in settlement. It is undisputed that the Public Service and INA policies were each in the face amount of $2,000,000, and the Fireman's policy in the face amount of $100,000. Thus there remains for consideration whether INA is required to pay Public Service $118,750, representing INA's ratable one-half share of the remainder of the settlement, as determined in the judgment under review.

The dissent concludes that INA cannot be required to contribute at all, because pursuant to the decision in *Lumbermens (supra)*, the Fireman's policy was required to be exhausted before INA could be called upon to contribute. However, this ignores the fact that the Fireman's policy was for $100,000. If Fireman's had paid the $100,000, there would still remain $150,000 to be paid by the excess carriers since the settlement was for $350,000 and Statewide paid $100,000. Applying the $100,000 which should have been paid by Fireman's, there remains $150,000 required to be paid by the excess carriers.

The Public Service policy is not to be equated with the Fireman's policy, as the dissent implies. It is in no sense "underlying insurance" under the INA policy. INA's policy

established itself as excess to the Fireman's policy in. the same manner as the second Allstate policy in the *Lumbermens* case became excess to the first Allstate policy. INA listed the Cosmopolitan policy. The second Allstate policy in *Lumbermens* listed the first Allstate policy.

Nor is INA in the same position as Lumbermens Mutual Casualty Company in the *Lumbermens* case. As the Court of Appeals there observed, the other insurance clause in the Lumbermens policy "provided for coverage in excess of 'any other valid and collectible insurance available to the insured, whether such other insurance is stated to be primary, contributing, excess or contingent' " *(Lumbermens Mut. Cas. Co. v Allstate Ins. Co.,* 51 NY2d, at p 655). The Court of Appeals held that such language made the Lumbermens policy excess to all other coverage available, including excess coverage. The INA other insurance clause provides as follows:

"If collectible insurance with any insurer is available to the insured covering a loss also covered hereunder, the insurance hereunder shall be in excess of, and not contribute with such other insurance provided, however, this does not apply to insurance which is written as excess insurance over INA's amount of liability provided in this policy.

"When both this insurance and other insurance apply to the loss of the same basis whether primary, excess or contingent, INA shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

"(a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares INA shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

"(b) Contribution by Limits. If any of such other insur-

ance does not provide for contribution by equal shares, INA shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

It is plain that the INA provision intends contribution where there is another excess policy not specifically excluded as underlying insurance.

Moreover, the other insurance clause in the Public Service policy is more nearly akin to the *Lumbermens* policy *(supra)*. The Public Service policy provides as follows: "If other valid and collectible insurance with any other insurer is available to the Insured covering a loss also covered by this policy, other than insurance that is specifically excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance." That clause plainly intends to be excess to any policy, excess or otherwise, unless such other policy specifically states it is to be in excess of the insurance afforded by the Public Service policy.

It may well be that this clause makes the Public Service policy excess to the INA policy. However, Public Service has asserted no such claim and does not appeal. It follows that Public Service and INA are both excess carriers. Under the general rule, Public Service would be entitled to recover $75,000 representing one half of such excess. This conclusion assumes that the excess coverage clauses of the Public Service policy and the INA policy generally purport to be excess to each other so that they cancel each other out. Thus each insurer is required to contribute in proportion to the limit of its policy of insurance. It is undisputed that the Public Service policy and the INA policy were each in the face amount of $2,000,000.

Obviously Public Service was not in a position to assert the claim in the amount we here recognize because the *Lumbermens* case *(supra)* had not yet been decided by the Court of Appeals. However, it should not be penalized because the rationale on which recovery is warranted under *Lumbermens* differs from the theory upon which the judgment was granted.

Accordingly, the judgment, Supreme Court, New York County (HELMAN, J.), entered August 14, 1980, awarding plaintiff $118,750 plus interest, costs and disbursements, should be modified on the law to reduce the judgment to $75,000 plus interest, costs and disbursements, and otherwise affirmed without costs.

SANDLER, J. (dissenting). The issue on this appeal presents a variation of the troublesome question recently addressed by the Court of Appeals in *Lumbermens Mut. Cas. Co. v Allstate Ins. Co.* (51 NY2d 651, revg 73 AD2d 868), concerning the respective liabilities of excess insurance policies covering the same accident.

In its opinion in *Lumbermens*, the Court of Appeals noted (at p 655): "The general rule is, of course, that where there are multiple policies covering the same risk, and each generally purports to be excess to the other, the excess coverage clauses are held to cancel out each other and each insurer contributes in proportion to its limit amount of insurance". However, the court found the general rule inapplicable to the case before it (p 655) "because its use would effectively deny and clearly distort the plain meaning of the terms of the policies of insurance here involved." For reasons essentially the same as those that led the Court of Appeals to that conclusion in *Lumbermens*, I believe that Special Term, in its decision rendered prior to the Court of Appeals opinion in *Lumbermens*, erred in applying the general rule of contribution, and that the defendant Insurance Company of North America (INA) is accordingly entitled to a judgment in its favor.

The essential facts were stipulated by the parties at trial following a remand by this court on a prior appeal (71 AD2d 353). Salem Truck Leasing, Inc. (Salem) was insured by Statewide Insurance Co. (Statewide) and Public Service Mutual Insurance Co. (Public Service). A Salem-owned vehicle, while leased to Pokur Packing, Inc. (Pokur), which was in turn insured by Fireman's Fund American Insurance Cos. (Fireman's) and INA, was involved in an accident on June 20, 1975 in which Dawn Mauro was injured. The action was settled for $350,000 upon consent of the parties to the instant action. Statewide, the primary

insurer of the leased vehicle, paid its policy limit of $100,000 toward the settlement. Public Service paid the remaining $250,000 and then commenced this action against Fireman's and INA seeking to have them contribute proportionate shares of the $250,000. Fireman's settled for $12,500 leaving for determination at trial whether INA would be required to contribute $118,750, a one-half share of the remainder of the settlement, to Public Service. The trial court found that Public Service, Fireman's and INA were co-insurers on an equal footing and entered judgment in favor. of Public Service against INA. I disagree, and would reverse the judgment appealed from.

It is agreed that the Statewide policy, providing $100,000 coverage on the vehicle owned by Salem, was primary liability insurance, and Statewide's policy limit was accordingly applied to the settlement. It seems equally clear that Salem's second policy covering the vehicle, that issued by Public Service, was designed to be excess coverage to the Statewide policy. That policy, termed a "Catastrophe Umbrella Liability Policy," provided $2,000,000 excess coverage per occurrence.

In a clause essentially indistinguishable. from a comparable clause in the INA policy, Public Service's policy, under the caption "UNDERLYING LIMIT—RETAINED LIMIT", limited its liability in pertinent part as follows:

"The Company shall be liable only for ultimate net loss. resulting from any one occurrence in excess of either:

"(a) the amounts of the applicable limits of liability of the underlying insurance as stated in the Schedule of Underlying Insurance plus the applicable limits of any other underlying insurance collectible by the insured". The appended schedule specifically listed Statewide's policy as underlying insurance.

The policy further set forth in a clause captioned "Other Insurance": "If other valid and collectible insurance with any other insurer is available to the insured covering a loss also covered by this policy, other than insurance that is specifically excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance."

The two policies issued to Pokur, the lessee of the vehicle, run parallel to the above-described policies issued to Salem. Fireman's policy, providing $100,000 coverage, was specifically primary with regard to vehicles owned by Pokur but went on to provide with respect to a nonowned vehicle, that "this insurance shall be excess insurance over any other valid and collectible insurance available to the insured."

In its other insurance clause, Fireman's policy limited its liability with regard to losses covered by the excess provisions of other policies in terms almost identical with those used in the INA policy.

The INA liability policy on Pokur, like the Public Service policy described above, was termed an "Excess Blanket Catastrophe Liability Policy", and also provided $2,000,000 excess coverage per occurrence. In language essentially the same as that described above with regard to Public Service, INA defined its liability as follows:

"With respect to personal injury * * * INA's liability shall be only for the ultimate net loss in excess of the Insured's retained limit defined as the greater of

"(a) an amount equal to the limits of liability indicated beside the underlying insurance listed in Schedule A hereof, plus the applicable limits of any other underlying insurance collectible by the Insured".

In its other insurance clause, as already noted, INA described its obligation to contribute to a loss covered by the excess coverage provisions of other policies in terms essentially the same as those used in Fireman's policy.

Fireman's policy was not listed as underlying insurance in INA's policy. At the time the INA policy came into effect Pokur's primary underlying insurance coverage was provided under a policy issued by the Cosmopolitan Mutual Insurance Company which was scheduled to expire some two weeks after the effective date of INA's policy. On Schedule A, entitled "SCHEDULE OF UNDERLYING INSURANCE," Cosmopolitan's policy was listed with its identification number and the additional words "& Renewal." After INA's policy was issued, the Cosmopolitan policy was not renewed, and Pokur "replaced" it with the Fireman's policy, a fact stipulated by the parties.

As argued on this appeal, the principal issue was presented by INA's contention that Fireman's policy, including its excess provisions with regard to nonowned vehicles, is "underlying insurance collectible by the Insured," and accordingly must be exhausted before INA's coverage is reached.

Analysis of this issue necessarily starts with recognition that INA's policy would clearly have been excess to the Cosmopolitan policy if that policy had been in effect at the time of the accident, and similarly would have been excess to Fireman's policy if that replacement policy had been listed in Schedule A. In either of those circumstances the situation presented would have been identical to that addressed by the Court of Appeals in *Lumbermens* (51 NY2d 651, *supra*) with regard to the two Allstate policies there in issue. One of the Allstate policies (the second) had provided primary coverage to the insured with regard to a specific automobile, but as to accidents involving a relative of the insured driving a nonowned automobile, the coverage was designated as excess. As to such an event, the one in fact present in the case, the policy stated (p 654) that " '[i]f there is other insurance * * * the insurance with respect to a * * * nonowned automobile shall be excess insurance over any other collectible insurance.' "

The third Allstate policy, denominated an executive policy, provided in terms quite similar to those described above in both the Public Service and INA policies, that Allstate would be responsible for the " 'net loss in excess of insured's retained limit,' " and then defined " 'retained limit' " as " 'the sum of applicable limits of underlying policies listed in Schedule A hereof and the applicable limits of any other underlying insurance collectible by the insured.' " (51 NY2d, at p 654.)

The second Allstate policy was listed in Schedule A, and the court concluded that the executive policy was designed specifically to provide coverage in excess of that provided by the listed policy notwithstanding the fact that both policies described the relevant coverage as excess. The question thus presented here is whether a different result follows where the listed policy expires and is replaced by another policy which is not specifically listed.

Significantly that very question was addressed by Public Service in the memorandum of law it submitted to the trial court in the following quite precise language:

"Further, it does not matter that INA did not substitute the FIREMAN'S FUND commercial automobile policy on its 'Schedule A' when Pokur replaced the Cosmopolitan policy.

"Most excess policies provide for an automatic substitution of a scheduled policy when the policy scheduled is replaced by the insured; and indeed trade usage provides for the substitution even in the absence of policy language on the basis that such was the insured's intention."

Of course this memorandum was submitted prior to the decision of the Court of Appeals in *Lumbermens (supra)* but I see no reason to doubt that it fairly and accurately states the accepted understanding among insurance companies of the significance to be attached to the replacement of a listed policy by another policy.

Lending further support to Public Service's acknowledgment of the applicable trade usage is condition 11 of INA's policy which required Pokur to maintain the policies listed in Schedule A, and in the event of Pokur's failure to do so, stated that "INA shall be liable only to the extent that it would have been liable had the Named Insured complied therewith."

The validity of the acknowledgment made by Public Service in its trial court memorandum would seem to be consistent with the underlying realities of the situation so far as one not deeply immersed in the mysteries of insurance company practices can discern those realities. Surely it does not make sense that the measure of exposure under an "Excess Blanket Catastrophe Liability Policy" providing $2,000,000 coverage per occurrence, should be drastically altered by the circumstance that a listed policy expired, and the insured decided to replace it with another policy.

So far the analysis presented is in accord with that adopted in the majority opinion. My disagreement is with that aspect of the majority's determination that places Public Service and INA on an equal footing with regard to

Fireman's coverage, and requires them to share proportionately the amount remaining after application of the limit of Fireman's policy notwithstanding the fact that Fireman's policy was not listed in the Public Service schedule nor a replacement for a listed policy. Although there is much to be said for an analysis supporting this conclusion, I doubt the wisdom of this court reaching the issue in a case in which the question was not argued by either party and in which the result reached is directly contrary to the position taken throughout the litigation by the party which benefits from it.

Preliminarily, I doubt the validity of the majority opinion's suggestion that the "other insurance" clause in the Public Service policy is comparable to the clause in the Lumbermens policy which the Court of Appeals had found to provide coverage excess to all the other insurance coverage in that case. This view is based on the circumstance that the Public Service "other insurance" clause omits language found in the other two policies which sets forth a formula for contribution in the event it should be determined that coverage, including excess coverage, shall be found to be on the same basis as coverage in other applicable policies. I am not persuaded that the omission of such language in the Public Service policy gives rise to the legal consequences that the Court of Appeals found to attach in *Lumbermens (supra,* p 655) to a provision in Lumbermens' policy that it was to be in excess "of 'any other valid and collectible insurance available to the insured, whether such * * * insurance is stated to be primary, contributing, excess or contingent.' "

The more substantial basis for the majority's conclusion seems to me to arise from a consideration of the nature of umbrella policies, like the Public Service and INA policies, which are designed to provide excess coverage in the event of occurrences giving rise to exceptionally high damages. There is clearly merit to the view that there are circumstances in which such policies should not contribute proportionately with policies, with significantly more limited coverage, which are essentially primary in character but with excess provisions applicable in limited circumstances. Although the Court of Appeals did not express

such a rule in *Lumbermens (supra)*, it was not required to reach that issue under the facts presented, and the opinion did cite two decisions which are consistent with the conclusion here reached by the majority. (See *Allstate Ins. Co. v Employers Liab. Assur. Corp.*. 445 F2d 1278; *Prudential Prop. & Cas. Ins. Co. v New Hampshire Ins. Co.*, 164 NJ Super 184.)

Notwithstanding my appreciation of the merit of this analysis, it seems to me an obvious mistake for the court to reach the issue in this case. Neither party to the litigation addressed the issue and we are wholly without the benefit of argument concerning it. The conclusion reached by the court is directly contrary to the position consistently urged throughout the litigation by Public Service, which is the beneficiary of the court's determination, and which is placed in a more advantageous position in relation to the other policies than it sought under its own approach.

It is not a sufficient answer to say that the Court of Appeals decided *Lumbermens (supra)* after the litigation commenced and while the matter was on appeal. *Lumbermens* was decided before this appeal was argued and Public Service neither argued the question orally nor requested an opportunity to file a supplemental brief addressing it. It is surely at least plausible that Public Service's position in this litigation, conceding its obligation to share liability proportionately with Fireman's and claiming only that INA had an equal obligation, may well have represented Public Service's understanding of the obligations it assumed under the policy it issued.

The effect of the court's decision will clearly be substantial with regard to the exposure of insurance companies under many outstanding policies. I find it difficult to justify reaching such a decision in a case in which the issue has not been argued and in which we have not had the benefit of argument on behalf of any insurer likely to be adversely affected as a result of what we decide. The question, a novel one in this State and not squarely disposed of by any authority of which I am aware, is surely not free from doubt. It is by no means clear why Public Service, in issuing a catastrophe policy to a company in the business of leasing

cars, did not explicitly provide that its coverage should be excess at least to any primary insurance secured by the lessee. Nor is it clear that Fireman's Fund, at the time it issued the policy in question here, did not reasonably anticipate that the general rule of contribution would apply as between it and the owner's catastrophe liability insurer. Given the general understanding of the applicable rule of contribution at the time the policies in question were issued, it seems likely that none of the companies concerned intended or designed their policies to achieve the result reached in the majority opinion.

Accordingly, the judgment of the Supreme Court, New York County (HELMAN, J.), entered August 14, 1980, awarding plaintiff $118,750 plus interest, costs and disbursements, should be reversed and judgment should be entered in favor of INA.

KUPFERMAN, J. P., LUPIANO and BLOOM, JJ., concur with FEIN, J.; SANDLER, J., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on August 14, 1980, modified, on the law, to reduce the judgment to $75,000 plus interest, costs and disbursements, and otherwise affirmed without costs.