ALLSTATE INSURANCE COMPANY, Appellant, v FARMERS INSURANCE GROUP et al., Defendants, and U.S. FIRE INSURANCE COMPANY, Respondent.

First Department, May 9, 1985

### APPEARANCES OF COUNSEL

*Stephen J. Smirti, Jr.,* of counsel (*William M. Savino* with him on the brief; *Rivkin, Leff, Sherman & Radler,* attorneys), for appellant.

*William H. Morris* of counsel (*Gerald P. McMorrow* with him on the brief; *Morris, Graham, Stephens & McMorrow,* attorneys), for respondent.

### OPINION OF THE COURT

FEIN, J.

This case raises again the issue of how "excess" insurers should contribute to the satisfaction of a claim once the primary insurance coverage has been exhausted.

The pedestrian victim was injured crossing the street in December 1979 when she was struck by a vehicle owned by Trans-Mountain Leasing Corp., leased to Maria Stowe, and being driven with permission at the time by Peter Kardaras. A damage action against the vehicle's owner, lessee and driver was settled in April 1983 for $1,000,000.

The driver of the vehicle was covered by a $500,000 liability insurance policy issued to his parents by plaintiff Allstate Insurance Company. Stowe, the lessee, was insured by Farmers

Insurance Group to a maximum limit of $100,000. Trans-Mountain, the owner, had two insurance policies: one, issued by Guaranty National Insurance Company, provided contingency coverage in the event that the lessee did not have primary insurance coverage in effect; the other was a "Commercial Comprehensive Catastrophe Liability Policy" issued by defendant U.S. Fire Insurance Company, with limits of $5,000,000.

The terms of the settlement of the damage action were that Farmers (Stowe's insurer) would immediately pay the first $100,000, with the balance to be obligated *in limine* as follows: $500,000 would be guaranteed by Allstate (Kardaras' insurer), and the remaining $400,000 would be paid immediately by U.S. Fire (one of Trans-Mountain's insurers), with the precise breakdown of contribution to be resolved by the same Judge who had presided over the damage settlement, in a declaratory judgment action to be instituted by Allstate. Actual payment of the guaranteed $500,000 was to abide that resolution. This declaratory judgment action was then commenced. The ensuing judgment at Trial Term confirmed the order of responsibility as stipulated *in limine,* viz., Farmers ($100,000), Allstate ($500,000), and U.S. Fire ($400,000).

It is undisputed that the Farmers policy was primary insurance, and that Farmers has already paid to the extent of its liability ($100,000). Trial Term found that Guaranty National was absolved from liability upon its policy covering Trans-Mountain, because it was a contingency policy which, by its terms, would only be called into operation if the primary insurance coverage of Stowe were found to be inapplicable. There was no appeal from that determination. Thus, the only question to be resolved is the manner in which Allstate and U.S. Fire should contribute to the balance of $900,000.

U.S. Fire maintains, as Trial Term held, that Allstate is liable to the full extent of its coverage ($500,000), and that U.S. Fire's obligation is only for the remaining $400,000. Allstate contends either that its coverage was excess to that of U.S. Fire, which should be exhausted first, or that both policies provided excess coverage, and thus should contribute ratably in proportion to the extent of each insurer's total liability.

The general rule is that where two or more insurance policies purport to provide coverage of the same risk in excess of other available insurance, the "excess" clauses cancel each other out, obligating each such insurer to share ratably in the settlement (*Federal Ins. Co. v Atlantic Natl. Ins. Co.,* 25 NY2d 71). The recognized exception to this rule is where the terms of one policy

specifically identify it as providing coverage in excess of another named policy.

Three nonprimary insurance policies were involved in *Lumbermens Mut. Cas. Co. v Allstate Ins. Co.* (51 NY2d 651). One policy, issued to the mother of the responsible driver of the automobile, provided that its coverage would be excess "over any other collectible insurance" (*supra,* p 654). The terms of a second policy, issued by the same company to the father of the driver, made it excess to the limits of any underlying insurance listed in an attached schedule, included in which was the policy issued to the driver's mother. The Court of Appeals held that the parties, in purchasing these policies, had clearly bargained for separate layers of excess coverage, and that blind adherence to the general rule of ratable contribution among the excess insurers "would effectively deny and clearly distort the plain meaning of the terms of the policies of insurance here involved" (*supra,* at p 655).

The third excess policy involved in *Lumbermens* (*supra*), called a "Catastrophe Policy", provided coverage up to $5,000,000, but in excess of "any other valid and collectible insurance available to the insured, whether such other insurance is stated to be primary, contributing, *excess* or contingent" (emphasis added). The Court of Appeals held that such a reference to other "excess coverage", albeit unidentified, effectively raised this policy to a still higher layer of coverage.

"Catastrophe" insurance has become known in the industry under the sobriquet of an "umbrella" policy, one which is offered at moderate cost to provide financial security at very high levels where other coverages terminate (*see,* 8A Appleman, Insurance Law and Practice § 4909.85). However, the name of the policy is not dispositive. The guide is purpose and language. In *Lumbermens* (*supra*), it was not the *name* of the third excess policy ("Catastrophe") but rather the plain language of that policy which made it secondary to other excess insurance (*see,* 51 NY2d, at pp 655-656). As the Court of Appeals made clear, in the absence of such express language, the general rule of ratable contribution for multiple excess insurers would be applicable.

Here, ratable contribution between the excess insurers is required by the absence of either specific reference to each other (*see, Kansas City Fire & Mar. Ins. Co. v Hartford Ins. Group,* 57 NY2d 920; *Public Serv. Mut. Ins. Co. v Fireman's Fund Am. Ins. Cos.,* 82 AD2d 403, 406, *affd* 55 NY2d 868), or language specifically making either coverage secondary to all other "excess"

insurance policies (*Lumbermens Mut. Cas. Co. v Allstate Ins. Co., supra,* at pp 655-656). The language in the Allstate and U.S. Fire policies, respectively, is virtually identical to the corresponding language in the policies of the first and second excess insurers in the *Lumbermens* case (*supra*). The Allstate policy (like the first excess policy in *Lumbermens,* also issued by Allstate) provided that insurance with respect to "a non-owned automobile shall be excess insurance over any other collectible insurance". The language of U.S. Fire's "catastrophe" policy was quite similar to the corresponding language in the second excess policy in *Lumbermens* (there called an "Executive" policy), in that the insurer in each instance promised to pay the net loss in excess of the insured's "retained limit", which was defined as the sum total of applicable limits of "underlying policies listed in Schedule A". The crucial difference is that in *Lumbermens,* the first excess policy was listed in the schedule of the second policy. In the instant case, it was not. The U.S. Fire policy here lists a number of underlying policies, but the Allstate policy is conspicuously absent. Moreover, the U.S. Fire policy expressly covered the "very car" involved in the accident. To the extent that *State Farm Fire & Cas. Co. v LiMauro* (103 AD2d 514) is to the contrary, we respectfully decline to follow it.

Even the claim summary, prepared by U.S. Fire's excess supervisor in October 1980, listed only the Guaranty National and the Farmers policies as underlying this umbrella policy, to the liability extent of $500,000 and "100/300", respectively. The fact that the existence of the Allstate policy was only recently discovered by U.S. Fire does not mean that the plain meaning of the language of the Allstate and U.S. Fire policies should be ignored.

The judgment of Supreme Court, New York County (Andrew R. Tyler, J.), entered December 23, 1983, insofar as it declared and ordered that Allstate pay $500,000 toward settlement of the underlying personal injury action, and further declared confirmation of U.S. Fire's discharge of its responsibilities in that action with its payment of $400,000 toward the settlement, should be modified, on the law and the facts. Specifically, the third, fourth and eighth decretal paragraphs of said judgment should be modified to declare that Allstate and U.S. Fire contribute on an equal footing, albeit ratably in accordance with the policy limits of their respective coverages, toward the final $900,000 of the settlement of the underlying personal injury action. A superseding judgment should be settled in Supreme Court, in accordance herewith.

CARRO, J. P., ASCH and MILONAS, JJ., concur.

Judgment, Supreme Court, New York County, entered on December 23, 1983, unanimously modified, on the law and the facts. Specifically, the third, fourth and eighth decretal paragraphs of said judgment are modified to declare that Allstate and U.S. Fire contribute on an equal footing, albeit ratably in accordance with the policy limits of their respective coverages, toward the final $900,000 of the settlement of the underlying personal injury action. A superseding judgment should be settled in Supreme Court, in accordance with the opinion of this court herein.