Northbrook Excess and Surplus Insurance Company, Appellant, v Chubb Group of Insurance Companies, Respondent.

First Department, December 19, 1985

APPEARANCES OF COUNSEL

*Robert L. Boydstun* of counsel *(Brian J. Isaac* with him on the brief; *Gladstein & Isaac,* attorneys), for appellant.

*Sol Zepnick, P. C.,* for respondent.

**OPINION OF THE COURT**

SANDLER, J.

In this declaratory judgment action the court is once again required to address the often knotty question as to whether a policy providing excess insurance comes within an exception to the general rule that "where there are multiple policies covering the same risk, and each generally purports to be excess to the other, the excess coverage clauses are held to cancel out each other and each insurer contributes in proportion to its limit amount of insurance". *(Lumbermens Mut. Cas. Co. v Allstate Ins. Co.,* 51 NY2d 651, 655.)

The issue arises in this case in the frequently litigated situation in which one of the policies, the policy of Chubb Group of Insurance Companies (Chubb), is primary as to an owned vehicle but excess as to a nonowned vehicle, and the second policy, that issued by Northbrook Excess and Surplus Insurance Co. (Northbrook), is an umbrella policy covering multiple risks without offering primary coverage as to any of them, and provides that it shall not contribute until all other collectible insurance covering the loss has been exhausted.

Whatever doubts may previously have existed in this situation because of differences between the phrasing of the Northbrook umbrella policy and the policy found by the Court of Appeals in *Lumbermens Mut. Cas. Co. v Allstate Ins. Co. (supra)* to constitute a final tier of coverage, have been resolved by the recent decision of the Court of Appeals in *State*

*Farm Fire & Cas. Co. v LiMauro* (65 NY2d 369). Both in result and in analysis, notwithstanding inevitable variations in facts and language, the opinion in *LiMauro,* decided after the Special Term judgment here appealed from, clearly establishes that the umbrella policy in this case represents a final tier of coverage and is not required to contribute ratably with the Chubb excess policy.

On March 23, 1981, DRAC (Dealer Rent-A-Car) Chrysler Corporation (DRAC) rented one of its owned vehicles to Belts, Inc., also known as Galaxy Trimming and Accessories, Inc. (Galaxy). On March 24, the rented van, while being driven by a Galaxy employee, was involved in an accident which caused the death of Juan Gonzalez. The Gonzalez estate brought a tort action in Supreme Court against DRAC, Galaxy and the driver, which was settled for $650,000. The stipulation of settlement required Continental Insurance Company (DRAC's primary insurer on its owned vehicles) to pay its full policy coverage of $500,000, and Chubb and Northbrook to pay $75,000 each, without prejudice to the commencement of a declaratory judgment action to determine the next layer of coverage over Continental's $500,000 primary coverage.

Chubb had issued to Galaxy a $500,000 "Business Auto Policy" which provided in pertinent part: "For any covered auto you own this policy provides primary insurance. For any covered auto you don't own, the insurance provided by this policy is excess over any other collectible insurance."

The policy issued by Northbrook to Chrysler Corporation provided $10 million excess coverage per occurrence not only for DRAC's automobile liability, but also for Chrysler's general liability, corporate automobile liability, workers' compensation, garage liability, automobile products liability, general liability for a housing project, aircraft liability, and worldwide comprehensive liability. As here pertinent, the policy provided:

"The Company's limit of liability for Personal Injury or Property Damage or both combined, shall be only for the ultimate net loss in excess of the limits of the Underlyings as set out in the attached schedule and then only up to an amount not exceeding $10,000,000 for each occurrence * * *

"It is further provided, however, that if other valid and collectible insurance is available to any interest such interest shall not become an Insured with respect to this coverage until all other applicable coverage available to them has been

exhausted and then the Company shall be liable for the ultimate net loss in excess of such insurance and then up to but not exceeding the limit of liability as aforesaid."

As contemplated by the stipulation of settlement, Northbrook brought this action for declaratory judgment and indemnification against Chubb alleging that its policy was excess to Chubb's and that it should be reimbursed for its $75,000 contribution to the underlying settlement. Both parties moved for summary judgment. Concluding that the Northbrook policy did not adequately convey an intent to make it excess to policies not listed in the appended schedule of underlying policies, Special Term determined that both policies should contribute to the liability not covered by the primary carrier, and should contribute proportionately to the base amounts of their respective policies. In view of the decision in *State Farm Fire & Cas. Co. v LiMauro* (65 NY2d 369, *supra*), it is clear that the judgment should be reversed to declare that the Northbrook policy is not required to contribute to the payment of the judgment and summary judgment should be granted to Northbrook in the amount of $75,000, with interest and costs.

Analysis of the issue presented appropriately starts with a consideration of the Court of Appeals opinion in *Lumbermens Mut. Cas. Co. v Allstate Ins. Co.* (51 NY2d 651, *supra*). The Court of Appeals determined that the general rule providing for ratable contribution by excess insurers was inapplicable with regard to two of the excess policies before it "because its use would effectively deny and clearly distort the plain meaning of the terms of the policies of insurance here involved" *(supra,* at p 655).

The rule was found inapplicable to one of the two Allstate policies providing excess coverage, because that policy, denominated an executive policy, "was designed specifically to provide coverage in excess of that provided by" (51 NY2d 651, 655, *supra)* the other Allstate excess insurance policy, which had been listed in an attached schedule as an underlying policy.

In addition, the court held, with regard to a "Catastrophe Policy" issued by Lumbermens Mutual Casualty Company, that the parties did not bargain for a ratable contribution with the Allstate policies, the Lumbermens policy specifically providing "coverage in excess of all other coverage available, including excess coverage" (51 NY2d 651, 656, *supra).* In

pertinent part, the Lumbermens policy provided for coverage in excess of "any other valid and collectible insurance available to the insured, whether such other insurance is stated to be primary, contributing, excess or contingent" (at p 655). The court went on to state: "The plain meaning of the language embodied within the terms of these contracts compels the conclusion that the rule of ratable contribution is inapplicable in this case * * * [W]e also observe that to force a ratable contribution among the nonprimary insurers in this case, in contravention to the plain meaning of the insurance contracts, would serve to prevent the insurance buyer from purchasing additional coverage at a premium reduced to reflect the lesser risk to the insurer" (at pp 656-657).

In *State Farm Fire & Cas. Co. v LiMauro* (65 NY2d 369, *supra)* a decision dispositive of the issue here presented, the court was required to consider the order of contribution between two policies: one issued by Aetna Casualty and Surety Company (Aetna), a "family automobile policy" with limits of $100,000 and $300,000 which included coverage for the insured while operating a nonowned automobile, and the second, a policy issued by State Farm Fire and Casualty Company (Fire) with a liability limit of $1,000,000, covering personal injury or property damage arising out of operation of an automobile, watercraft or aircraft or of business or rental property, and also covering the operation of an automobile by any person operating it with the consent of the named insured.

The Aetna policy provided primary coverage except as to a nonowned or temporary substitute automobile, in which event it was stated that the insurance was to be "excess insurance over any other valid and collectible insurance." The Fire policy, offering no primary coverage at all, provided coverage not only for automobile risks, but also for risks of many other types "in excess of the retained limit", which it defined, in pertinent part, as "the total limit(s) of liability of any underlying insurance collectible by the Insured." It also included an "other insurance" clause, which stated: "If other collectible insurance with any other insurer is available to the Insured covering a loss also covered hereunder (except insurance purchased to apply in excess of the sum of the Retained Limit —Coverage L and the limit of liability hereunder), the insurance hereunder shall be in excess of, and shall not contribute with, such other insurance."

The applicable rule was stated by the Court of Appeals in

the following words (65 NY2d 369, *supra):* "An umbrella policy, which covers multiple risks but offers no primary coverage as to any of them and provides that it 'shall be in excess of, and shall not contribute with' other collectible insurance covering a loss available to the insured, except such as in excess of the limits of the umbrella policy, is not required to contribute toward a loss until the limits of a liability policy covering the injury-causing automobile as a nonowned vehicle have been exhausted."

The court went on to say in its opinion that while the two policies "covered the same risk, they covered it at different levels because Fire's 'other insurance' clause limited its contribution obligation to insurance purchased to apply in excess of Fire's own limits, and Aetna's 'other insurance' clause, essentially a pro rata provision, limited its otherwise primary coverage only by the nonowned excess provision, which was not purchased to apply in excess of Fire's limits" (65 NY2d 369, 378, *supra).*

Support was found for the result reached in the different purposes for which the policies were issued and in the premium structure of the two types of coverage—Fire's premium of $144 for $1,000,000 coverage as compared with $119 premium for automobile coverage with $100,000/$300,000 limits —indicating that Fire intended to insure at a lesser level of risk than did Aetna.

The court found no significance (65 NY2d 369, 378, *supra)* in the "absence from Fire's 'other insurance' clause of the words 'whether * * * stated to be primary, contributing, excess or contingent' which were contained in the *Lumbermens* catastrophe policy, or the fact that Aetna's policy was not listed by Fire as an 'underlying policy' ".

Finally, the court noted that the conclusion it reached "accords with case law in other State and Federal courts, subordinating a policy issued as primary automobile insurance but applicable to a particular loss only because of its non-owned 'excess' coverage to a catastrophe or umbrella policy covering many different types of risk, none of them, however, on a primary basis" (65 NY2d 369, 379, *supra).*

Except for the circumstance that the premium received by Northbrook for the umbrella policy issued to Chrysler was a substantial one ($1,062,500), the rule set forth by the Court of Appeals in *State Farm Fire & Cas. Co. v LiMauro* (65 NY2d 369, *supra)* and the accompanying analysis, would appear to

apply precisely to the issue presented in this case. In evaluating the significance of the amount of the premium, it is clearly important to measure that premium against the extraordinarily comprehensive coverage provided by that policy. As already observed, the policy provided excess coverage of $10 million for any one occurrence, without limit to the number of such losses as might occur in one year as to most risks, and covered not only DRAC's automobile liability, but also, among other things, Chrysler Corporation's general liability, corporate automobile liability, workers' compensation, automobile products liability and worldwide comprehensive liability. Considered with regard to the amount of coverage and the inclusive nature of the risks embraced, the amount of the premium here charged does not justify an exclusion of the Northbrook policy from the rule explicitly set forth by the Court of Appeals in *State Farm Fire & Cas. Co. v LiMauro (supra)* regarding the order of contribution between an umbrella policy of the Northbrook type and an excess policy of the Chubb type.

Accordingly, the order and judgment of the Supreme Court, New York County (Martin B. Stecher, J.), entered October 18, 1984, which granted cross motions for summary judgment in part, and which adjudged that the two insurers should ratably share the $150,000 portion of the settlement of the underlying action which was in excess of the primary insurance coverage, should be reversed, on the law, with costs, to grant Northbrook's motion for summary judgment declaring that Northbrook is not required to contribute to the payment of the settlement until after exhaustion of the insurance provided by Chubb, and to grant judgment to Northbrook in the amount of $75,000 plus interest and costs.

KUPFERMAN, J. P., ASCH, BLOOM and ROSENBERGER, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on October 18, 1984, unanimously reversed, on the law, to grant Northbrook's motion for summary judgment declaring that Northbrook is not required to contribute to the payment of the settlement until after exhaustion of the insurance provided by Chubb, and to grant judgment to Northbrook in the amount of $75,000 plus interest and costs. Appellant shall recover of respondent $75 costs and disbursements of this appeal.