949 A.2d 851

NORTH JERSEY NEUROSURGICAL ASSOCIATES, P.A., AS SUB-ROGEE OF PEDRO GIL, PLAINTIFF–RESPONDENT, v. CLARENDON NATIONAL INSURANCE COMPANY, DEFENDANT–APPELLANT, AND STATE FARM INDEMNITY CO., DEFENDANT–RESPONDENT.

PEDRO GIL, PLAINTIFF–RESPONDENT, v. CLARENDON NATIONAL INSURANCE COMPANY, DEFENDANT–APPELLANT, AND GMAC INSURANCE COMPANY, DEFENDANT.

PHYSIOLOGIC ASSESSMENT SERVICES, PLAINTIFF–RESPONDENT, v. PEDRO GIL, DEFENDANT–THIRD PARTY PLAINTIFF/RESPONDENT, v. CLARENDON NATIONAL INSURANCE COMPANY, THIRD PARTY DEFENDANT–APPELLANT, AND STATE FARM INSURANCE COMPANY, THIRD PARTY DEFENDANT–RESPONDENT, AND GMAC INSURANCE COMPANY, THIRD PARTY DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued November 13, 2007—Decided May 13, 2008.

Before Judges STERN, COLLESTER and C.L. MINIMAN.

*David J. Dickinson,* argued the cause for appellant Clarendon National Insurance Company (*McDermott & McGee,* attorneys; *Mr. Dickinson,* of counsel; *Ruth A. Kavanagh,* on the brief).

*Walter L. Faust,* argued the cause for respondent North Jersey Neurosurgical Associates (*Walter L. Faust and Associates,* attorneys; *Mr. Faust* and *Randi S. Greenberg,* on the brief).

*Carl F. Mazzie,* argued the cause for respondent State Farm Indemnity Company, I/P/A State Farm Insurance Company (*Foster & Mazzie,* attorneys; *Rosario M. Patane,* on the brief).

*Sciro & Marotta,* attorneys for respondent Pedro Gil (relying on briefs submitted on behalf of North Jersey Neurosurgical Associates).

The opinion of the court was delivered by

STERN, P.J.A.D.

Clarendon National Insurance Company ("Clarendon") appeals from a judgment of February 2, 2007, resulting from three orders in these consolidated matters. The orders struck Clarendon's defense that Pedro Gil failed to cooperate with Clarendon's investigation of his Personal Injury Protection ("PIP") claim; concluded (pursuant to New York law) that Clarendon "is obliged to pay North Jersey Neurosurgical Associates billing to the extent that monies remain with the applicable PIP policy and endorsements," and provided that (pursuant to New Jersey law) Clarendon is "obliged to pay North Jersey Neurosurgical Associates' attorney's fees and costs," and to pay interest "in accordance with New York law." The court awarded $4,556.25 for counsel fees and $200 in costs to Gil's attorney, and $8,200 for counsel fees and $777 in costs to the attorney for North Jersey Neurosurgical Associates ("North Jersey"). The Law Division also denied Clarendon's motion to dismiss on grounds of *forum non conveniens* and because of Gil's failure to attend independent medical examinations (IMEs).

Clarendon contends that "conflict of law principles dictate that when a New Jersey resident is injured in a New York accident, New Jersey law should be applied in determining the injured party's eligibility for PIP coverage." It also contends that "if New York law is to be applied, this matter should be dismissed for *forum non conveniens* and then should be transferred to the appropriate forum in New York," that Gil's right to recover PIP from Clarendon is "subject to his failure to attend independent medical examinations" and that any "award of attorney's fees and interest should [ ] be subject to the limitations imposed under New York law."

The dispute is essentially between Clarendon, seeking the application of New Jersey law, and State Farm, seeking application of New York law, in this subrogation action.[1] Gil, a New Jersey resident, was injured in New York as a passenger in a car registered and insured by Clarendon in New York. As a passenger, he was entitled to PIP coverage under New York law, but as a resident of his brother's household in New Jersey, he was also insured under a State Farm policy issued to his brother in New Jersey. Under New Jersey law, he was entitled to PIP benefits thereunder. The accident occurred in Queens in May 2003. The Clarendon policy provided $50,000 in PIP benefits while the State Farm policy provided $250,000 in such benefits.[2] Accordingly, the parties agree there is a conflict between New York law, which requires PIP coverage under the policy issued to the host vehicle, and New Jersey law pursuant to which PIP benefits are paid under the insured's "no-fault" policy provisions. The parties dispute the law to be applied with respect to the PIP coverage.

Choice-of-law determinations are reviewed as matters of law, and we must review the trial court's determination *"de novo, with no deference to the trial court's views." Arias v. Figueroa,* 395 *N.J.Super.* 623, 627, 930 *A.*2d 472 (App.Div.), *certif. denied,* 193 *N.J.* 223, 936 *A.*2d 969 (2007). We apply New Jersey choice-of-law principles in deciding the governing law, *Rowe v. Hoffman– La Roche, Inc.,* 189 *N.J.* 615, 621, 917 *A.*2d 767 (2007); *Erny v. Estate of Merola,* 171 *N.J.* 86, 94, 792 *A.*2d 1208 (2002); *Moper*

---

[1] The record reveals that the Physiologic Assessment Services' complaint was filed in the Passaic County Special Civil Part, and that Gil's declaratory judgment action was filed in the Law Division, Passaic County. These complaints were ultimately consolidated in Bergen County where North Jersey's complaint was filed. The Physiologic Assessment Services complaint is not in the record, but it appears uncontested that it is a medical provider doing business in New Jersey. North Jersey seeks to uphold the judgment on its assignments of benefits.

[2] The claim by North Jersey exceeded the amount of the Clarendon coverage. The question, therefore, deals with whether Clarendon must pay the first $50,000 in PIP benefits.

*Transp., Inc. v. Norbet Trucking Corp.*, 399 *N.J.Super.* 146, 153, 943 *A.*2d 873 (App.Div.2008), and employ a " 'government interest' analysis . . . designed to result in application of the law of the state with the most significant interest in resolving the issue presented." *Arias, supra,* 395 *N.J.Super.* at 627, 930 *A.*2d 472. It is also settled that choice-of-law determinations must be made on an "issue by issue" basis, in which each issue is analyzed separately, and different issues in the same litigation may be governed by the law of different states. *Rowe, supra,* 189 *N.J.* at 621, 917 *A.*2d 767; *Erny, supra,* 171 *N.J.* at 94–95, 792 *A.*2d 1208; *Moper, supra,* 399 *N.J.Super.* at 153–54, 943 *A.*2d 873.

■ The first prong in this analysis requires determining whether an actual conflict of law exists. *Rowe, supra,* 189 *N.J.* at 621, 917 *A.*2d 767; *Fu v. Fu,* 160 *N.J.* 108, 118, 733 *A.*2d 1133 (1999); *Moper, supra,* 399 *N.J.Super.* at 153, 943 *A.*2d 873. As already noted, New Jersey law provides that an automobile insurance policy shall be the primary source of PIP "no-fault" benefits for a resident relative of the insured who is not a named insured on another policy. Specifically, *N.J.S.A.* 39:6A–4.2 provides:

> [T]he personal injury protection coverage of the named insured shall be the primary coverage for the named insured and any resident relative in the named insured's household who is not a named insured under an automobile insurance policy of his own. No person shall recover personal injury protection benefits under more than one automobile insurance policy for injuries sustained in any one accident.

*See also* Craig & Pomeroy, *New Jersey Auto Insurance Law* § 6:2–2 (Gann 2008). In contrast, it is uncontested that New York law provides that a claimant shall seek "no-fault" benefits from the insurance policy of the host vehicle:

> [A]n applicant who is an operator or occupant of an insured motor vehicle, or any other person, not occupying another motor vehicle or a motorcycle, who sustains a personal injury arising out of the use or operation in New York State of such motor vehicle, shall institute the claim against the insurer of such motor vehicle.
> [*N.Y. Comp. Codes R. & Regs.* tit. 11, § 65–3.12a(1) (2008).]

Accordingly, as already noted, there is an actual conflict of law because Gil resided in New Jersey with his brother, who was the named insured on an auto insurance policy issued by State Farm,

and was entitled to PIP coverage under his policy, whereas New York law requires that, as a passenger in the New York insured vehicle, Gil is entitled to "no-fault" benefits from Clarendon, as the insurer of the host vehicle.

The conflict also gives rise to an additional issue as both parties assert the other carrier's coverage is "primary" and their coverage to be "excess coverage" after the first policy is exhausted. Both New Jersey and New York have determined that the excess clauses in two policies cancel each other out under these circumstances and result in both carriers being co-primary. *See Robinson v. Coia,* 183 *N.J.* 25, 29, 869 *A.*2d 878 (2005) (treating two "excess" policies as "co-primary"); *Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co.,* 28 *N.J.* 554, 562, 147 *A.*2d 529 (1959) (holding that when two carriers claim to be excess carriers "the general coverage of each policy applies and each company is obligated to share in the cost of the settlement and expenses"); *N.J.S.A.* 39:6A–4.2 (stating that "[n]o person shall recover personal injury protection benefits under more than one automobile insurance policy for injuries sustained in any one accident"); *Lumbermens Mut. Cas. Co. v. Allstate Ins. Co.,* 51 *N.Y.*2d 651, 435 *N.Y.S.*2d 953, 417 *N.E.*2d 66, 68 (1980) (holding that "[t]he general rule is, of course, that where there are multiple policies covering the same risk, and each generally purports to be excess to the other, the excess coverage clauses are held to cancel out each other"). However, despite the fact that both carriers provide co-primary coverage, New Jersey and New York differ in the allocation of coverage between the carriers, thus creating a conflict. New Jersey law requires equal apportionment "up to the lowest per accident coverage limit." *Ambrosio v. Affordable Auto Rental, Inc.,* 307 *N.J.Super.* 114, 126–127, 704 *A.*2d 572 (App.Div.1998). New York, on the other hand, holds that "each insurer contributes in proportion to its limit amount of insurance." *Lumbermens Mut. Cas. Co., supra,* 435 *N.Y.S.*2d 953, 417 *N.E.*2d at 68; *accord American Transit Ins. Co. v. Continental Cas. Ins. Co.,* 215 *A.D.*2d 342, 625 *N.Y.S.*2d 653, 654 (1995).[3]

---

[3] We requested and received additional briefs on this point. There appears to be no disagreement as to the law of each state, and State Farm adds that it "will

 As a result of these conflicts of law, we must consider the second prong of the conflict analysis in terms of evaluating which State has the most significant relationship to the action. *Rowe, supra,* 189 *N.J.* at 621–22, 917 *A.*2d 767; *Erny, supra,* 171 *N.J.* at 101, 792 *A.*2d 1208; *Moper, supra,* 399 *N.J.Super.* at 156, 943 *A.*2d 873. This entails identifying the governmental policies underlying each State's laws, and determining how those policies are affected by each State's contacts to the parties and to the litigation. *Rowe, supra,* 189 *N.J.* at 622, 917 *A.*2d 767; *Fu, supra,* 160 *N.J.* at 119, 733 *A.*2d 1133. The general factors to consider include (1) the needs of the interstate system, (2) "the relevant policies of the forum," (3) the relevant policies and relative interests of the States interested in the determination of the issue, (4) "the protection of justified expectations," (5) "the basic policies underlying the particular field of law," (6) the promotion of "certainty, predictability, and uniformity of result," and (7) "ease in the determination and application of the law to be applied." *Fu, supra,* 160 *N.J.* at 122, 733 *A.*2d 1133.

Clarendon argues that New Jersey has the most significant relationship to this litigation, and that the motion judge erred in determining otherwise. Clarendon characterizes the issue as one based in contract, rather than tort, citing to *State Farm Mut. Auto. Ins. Co. v. Estate of Simmons,* 84 *N.J.* 28, 37, 417 *A.*2d 488 (1980), for the proposition that the law of the place where the contract was made governs "unless the dominant and significant relationship of another state to the parties and the underlying issues dictates [otherwise]." *See also Moper, supra,* 399 *N.J.Super.* at 156–57, 943 *A.*2d 873 (finding conflict to be between two insurance carriers and applying law of the place of contract). Therefore, Clarendon believes the obligations under the New Jersey policy issued to the New Jersey insured control. Clarendon further observes that "New Jersey has a substantial interest in protecting the welfare of its residents" and medical providers

---

assume the position of the payor of no-fault benefits once Clarendon's policy exhausts."

here, and notes that Gil received medical treatment in New Jersey and that plaintiff, North Jersey, brought this action in New Jersey. Clarendon further argues that Gil had a "reasonable expectation" to be entitled to the full amount of his brother's "no-fault" coverage, regardless of the vehicle he was in at the time of the accident, and that applying New Jersey law would promote "certainty, predictability, and uniformity," since Gil could obtain all of his "no-fault" benefits from one source, State Farm, rather than having to first exhaust the coverage provided by Clarendon. Finally, Clarendon notes that the motion judge acknowledged New Jersey's interest in the litigation when he denied Clarendon's motion to dismiss for *forum non conveniens.*

On the other hand, North Jersey argues that the choice-of-law issue is not properly before us since Clarendon's notice of appeal refers only to the orders of February 2, 2007, and does not include or refer to the December 1, 2006, ruling which held New York to be the applicable law for the issue of primacy of coverage. North Jersey also argues that Clarendon should be "equitably estopped" from the coverage issue since Clarendon did, in fact, provide approximately $10,000 of coverage before terminating Gil's benefits, and that North Jersey was entitled to rely on this coverage in continuing to provide medical services to Gil. North Jersey further contends that the motion judge properly determined that New York had a more substantial interest in governing this issue because, under New York law, "no-fault" benefits are assignable to medical care providers, and making the host vehicle primary as required by New York law promotes "certainty, predictability and uniformity" by assuring coverage for treatment after an accident in New York and giving medical providers one place to look for coverage.

State Farm also argues that New York law should govern the issue of primacy of coverage. State Farm further contends that applying New York law would promote the parties' "justified expectations" that Clarendon would be the primary source of

coverage, which arose from Clarendon actually providing such coverage until it terminated Gil's benefits for his failure to appear at IMEs.

## I.

■ Clarendon's notice of appeal refers only to the judgment of February 2, 2007, and makes no mention of the earlier order of December 1, 2006, which provided "that the law of the State of [New York] is the applicable law to be applied to the claim for Personal Injury Protection benefits of Pedro Gil" and that Clarendon "is obligated to provide [PIP] benefits to Pedro Gil." The orders of February 2, 2007, did not formally address that issue. Rather, they "denied" the motion to dismiss "plaintiff's complaint for *forum non conveniens*" and "denied" the motion to dismiss the complaint of North Jersey and the claim of Gil against Clarendon because of Gil's failure to attend the IMEs. A third order of that day, striking the Clarendon defense relating to the IMEs, required Clarendon "to pay North Jersey Neurological Associates billing to the extent that monies remain with the applicable PIP policy and endorsements," required Clarendon to pay North Jersey's attorney fees and costs, and required Clarendon to pay, "in accordance with New York law," interest to North Jersey.

Respondents are technically correct that Clarendon's notice of appeal is defective because it does not refer to the order of December 1, 2006. *See R.* 2:5–1(f)(3). However, it is clear from the excerpts of the argument of February 2, 2007, presented to us and the judge's written decision of that day that the motions were premised on the choice-of-law analysis. Accordingly, we proceed to consider the issues raised.[4]

---

[4] One of the orders of February 2, 2007, contains a "rider" awarding $4,556.25 for counsel fees and $200 in costs to Gil, and $8,200 in counsel fees and $777 in costs to North Jersey. Accordingly, no one asserts there is no final judgment.

## II.

██ We conclude that New Jersey law controls the issue of PIP coverage of an insured who is a resident of New Jersey, where the policy was issued and the treatment was provided, because of its greater interest in protecting the injured resident and assuring his or her medical care. New York law, which protects its providers as well as citizens and persons injured in that State, might well apply when hospitalization or treatment of a New Jersey resident is required there.[5] However, here it appears that Gil returned to New Jersey for treatment in this state, and the dispute is between two carriers as to responsibility to the New Jersey resident for his treatment in New Jersey, where providers reasonably expect payment in accordance with New Jersey law. Thus, New Jersey law controls as to the issues in conflict, and would apply to determine the allocation of damages between the carriers resulting in an equal contribution up to the limits of the Clarendon policy. Accordingly, we reverse the choice-of-law determination. *See Moper, supra,* 399 *N.J.Super.* at 157–58, 943 *A.*2d 873.

## III.

██ The judge made his decision under New York law with respect to the IMEs. The decision was based on failure to mail the notice to Gil's proper address and the lack of an "affidavit from someone who actually mailed the notice for the IME." The judge noted that "[i]n New Jersey, the carrier has a similar heavy burden in dismissing a case for failure to comply with IME's." We fail to find any basis for disturbing the judge's determination. However, as New Jersey law controls, Clarendon may seek reconsideration of this subject on the remand we order.

---

[5] A different outcome if the treatment was by a New York medical provider for the same accident is not troublesome, as different public policy concerns are involved. *See State Farm Mut. Auto. Ins. Co., supra,* 84 *N.J.* at 41–42, 417 *A.*2d 488; *see also Restatement (Second) of Conflict of Laws* § 8 comment h (1971).

As a result of our ruling both the *forum non conveniens* and counsel fee rulings against Clarendon are moot, and the issues of counsel fees and interest must be reconsidered following the remand.

Finally, we note North Jersey's contention that

Clarendon voluntarily assumed primary responsibility for payment of Pedro Gil's medical expenses. Plaintiff North Jersey rendered services to Pedro Gil assuming that it would be paid. Clarendon's belated change in its position is inconsistent with its prior payments and manifestly unjust to both Pedro Gil and North Jersey and should not be permitted by this Court.

This issue was not raised in the Law Division nor decided by it. The question is whether Clarendon can be estopped from collecting the amount it paid or its policy limits towards the amount of medical bills paid. Clarendon advises us it made payments before learning of the brother's policy and stopped payments due to the discovery of this policy and not merely because he did not appear for IMEs. The issue, including the impact of the delay in raising the issue, may be addressed to the Law Division on the remand.

The orders of December 1, 2006, and February 2, 2007, are reversed to the extent inconsistent herewith, and the matter is remanded for further proceedings consistent herewith.