Chief Judge Fuld.
This appeal involves the respective obligations of two insurance companies under automobile liability policies which each had issued.
*74 On December 27, 1960 James Morton rented an automobile from the Hertz Corporation in Burlington, Vermont, and on the next day, while driving it, collided with another car. A passenger in his car, injured in the accident, brought suit against the drivers of both cars as well as against Hertz. Upon being served with the summons and complaint in the action, Morton forwarded the papers to the plaintiff, Federal Insurance Company, the insurer of his own automobile. Federal, in turn, transmitted the papers to the defendant, Atlantic National Insurance Company, the carrier which had insured the Hertz car, requesting that the latter defend the action on behalf of both Morton and Hertz. Atlantic refused to accede to the request; it was its position that both companies were equally obligated to Morton, that he was free to elect which of them should provide his defense and that its (Atlantic’s) sole obligation was to contribute, pro rata, to any recovery realized by the plaintiff.
In view of the position taken by Atlantic, Federal appeared and defended Morton in the negligence action. It was eventually settled for $16,000, Federal and the carrier of the other car involved in the accident each paying $8,000. When Atlantic refused to pay or contribute any amount to the settlement, Federal brought the present suit against Atlantic; it seeks judgment for $12,681.88-—-which represents its share of the settlement ($8,000) plus the expenses it incurred in defending the action. It is Federal’s submission that, since Atlantic was the insurer of the owner’s (Hertz’) car, it must be considered the primary insurer and, as such, obligated to assume the defense of Morton and pay any judgment up to the limits of its policy.
The court at Special Term granted Federal’s motion for summary judgment; the Appellate Division reversed, one justice dissenting, and the case is here by leave of that court upon a certified question.
The policy issued by Atlantic covered Hertz for liability resulting from its car rental operations and included, as an insured party, “ any person * * * to whom an automobile had been rented without a chauffeur by a named insured”. Morton, of course, fell within this definition. He was, as already noted, the named insured under a policy of his own with Federal *75 and that policy also provided him with coverage while he was temporarily using a ‘[1] non-owned ’ ’ automobile. Clearly, then, both policies afforded protection to Morton, and Ave are called upon to determine the responsibility of each carrier, a question not previously decided in this State.
In drafting their policies, both insurance companies attempted to anticipate the situation which eventuated. Federal’s policy, issued to Morton, recited that, while a loss arising from an accident involving his own automobile was to be shared Avith any other insurer on a prorata basis, the coverage it furnished while he was driving a "non-owned ’’ car was to “be excess insurance over any other valid and collectible insurance.” Atlantic’s policy, on the other hand, made no such distinction; it specified that all the coverage which it extended would be “ excess ”, whenever there was any other policy encompassing a loss that it insured. Most standard automobile insurance policies contain provisions similar to Federal’s. Normally, then, where the driver and the owner are separately insured, the driver’s own policy provides for “ excess ” coverage, whereas the OAvner’s policy contains a prorata “ other insurance ” clause. In such a situation, the OAvner’s policy is regarded as “primary” and the driver’s as “secondary.” (See, e.g., General Acc. Fire & Life Assur. Corp. v. Piazza, 4 N Y 2d 659.)
There is, though, a vital difference between such a case and the one before us, in which both policies specifically limit themselves to ‘ ‘ excess ’ ’ coverage when there is other available insurance. In the present case, both policies cover the same occurrence and both contain “ excess ” clauses. If we were to take the language literally and give effect to each of these “ other insurance ” clauses, we would be required to conclude that neither policy provided primary coverage. But that would be a logical impossibility since, quite obviously, there can be no excess insurance absent a policy providing primary coverage and, in the absence of such other policy, each would be primary. To give effect to the excess clause in either of the policies would defeat the similar provision in the other and it follows, therefore, that the “ excess ” clauses operate to cancel out each other, both coverages must be treated as primary and each company *76 is obligated to share in the cost of the settlement and the expenses. This, we note, is the view most of the courts which considered the question have adopted.[1]
The opinion of New Jersey’s high court in Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co. (28 N. J. 554) is particularly thoughtful and persuasive. “ If we should accept plaintiff’s contention that the owner’s policy is primary,” wrote the court, ‘ ‘ we would be compelled to completely disregard the excess clause of the policy.” And, after noting that the plaintiff’s theory appeared to be artificial and arbitrary, the court went on to say, “ [tjhere is no reason to give absolute effect to a provision in one policy while ignoring a similar provision in the other. Both clauses should occupy the same legal status. As applied to the facts of the present case, both policies provide that they shall be ‘ excess ’ insurance. However, it is obvious that there can be no ‘ excess ’ insurance in the absence of ‘ primary ’ insurance. Since neither policy by its terms is a policy of ‘ primary ’ insurance, neither can operate as a policy of ‘ excess ’ insurance. The excess insurance provisions are mutually repugnant, and as against each other are impossible of accomplishment. Each provision * * * is inoperative if there is no other insurance available. Therefore, the general coverage of each policy applies and each company is obligated to share in the cost of the settlement and expenses ” (p. 562; emphasis supplied).
Nevertheless, Federal urges us to declare the policy issued to the owner as primary. It contends that the coverage extended to a nonowned -car is but ‘ ‘ an incidental feature ” of a policy, that its principal purpose is to afford coverage for the insured’s own automobile. Federal insists that sound underwriting requires that the car owner’s coverage be deemed primary and the driver’s excess, and that Hertz’ insurer — Atlantic — is endeavoring to obtain the benefits of Morton’s policy although Hertz *77 agreed to furnish full insurance protection to him. Accordingly, despite the clear language of Atlantic’s policy, we are asked to depart from it and declare its coverage to he “ primary ’ ’.
We find no evidentiary support, or even explanation, for the argument that apportionment of liability between the two policies violates valid underwriting principles. The fixing of insurance rates is an extremely complex affair, depending as it does upon actuarial and statistical data which not only are difficult to obtain but also require a high degree of expertise to interpret. More, the essential policy considerations involved are ill-suited for initial judicial decision. (See Kulp, Bate-Making Process in Property and Casually Insurance — Coals, Technics, and Limits, 15 Law & Contemp. Prob. 493.) On the one hand, it might be argued that Hertz ought to bear the full cost of accidents as a proper cost of its car rental business while, on the other hand, one could say that imposing the loss on the driver induces greater care by threatening accident-prone drivers with increased premiums or loss of coverage. Such considerations indicate the absence of a clearly demonstrable result from an insurance underwriting point of view. Consequently, we must give effect to the parties ’ private law as reflected in their binding contractual arrangement.
Although both policies are explicit in affording coverage, Federal contends that Atlantic’s policy is the more specific of the two, since it was intended to cover accidents involving Hertz’ rental cars while Federal’s was primarily designed to cover Morton’s car, and that, accordingly, Atlantic must be held solely responsible. This impresses us as specious. Atlantic could, just as well and with equal force, claim that Federal’s policy is the more specific. Indeed, as one court observed in answering an identical argument (Continental Cas. Co. v. Buckeye Union Cas. Co., 143 N. E. 2d 169, 179 [Ohio]), “ The word ‘ specific ’ is comparatively meaningless unless we define the area of comparison. Policy A may be more specific than policy B in certain respects and less specific in others. * * * In the last analysis, potential liability in the event of negligent operation of the motor vehicle in question attached to both policies at exactly the same time and extended to the same acts, no more and no less. True, the policy of Continental extended coverage on the truck before that time. But the policy *78 of Buckeye extended coverage to Davis (the driver) before that time. The truck is a specific automobile. Davis is a specific person. Which is more ‘ specific ’ ? What are the comparative yardsticks one would employ in such a determination? We know of none. In our opinion, any attempt to weigh the specifics of the two on the balance scale of the law would be at best an arbitrary conclusion not based on any logical premise.” (Emphasis supplied.)
There can be no doubt that in the area of automobile liability the search for the more “ specific ” policy is an elusive one. Each carrier had the same understanding as to the risk it was ready to assume and each had an identical desire to avoid for itself and foist the entire liability off on whatever other carrier was available. Until clear criteria are established to determine the “specific” policy, we are necessarily involved in meaningless semantics. Any realistic discussion must, of necessity, be concerned with difficult rate-making considerations with which a court is not equipped to deal.
Nor is there any warrant for the view, expressed by the dissenting justice below, that Morton was defrauded by Hertz and Atlantic in that, although he was offered and, presumably, paid for full insurance protection as part of the cost of renting the car, he was not informed that his own insurance carrier might have to contribute to any loss. On initial examination, it might be said that Morton would have no concern with the dispute between the parties since he is, in any event, adequately insured. However, there is the possibility that he might become a rated risk if Federal is required to contribute. Whatever merit there might be to this view, the short answer is that we are not here concerned with a fraud action by Morton against Hertz based upon the rental agreement but rather, in the words of the majority below, with “ an action between two liability insurers to determine their respective liabilities under the policies ”. (29 A D 2d, at p. 206.)
In ,sum, then, there is no basis for concluding that Atlantic’s policy was primary or that it provided any broader or different coverage than that issued by Federal. As both policies assumed the same risk, both were obligated to defend Morton in a suit brought against him and both must contribute, pro rata, toward *79 payment of the cost of the settlement and legal fees and other expenses of the litigation. (See, e.g., Continental Cas. Co. v. Buckeye Union Cas. Co., 143 N. E. 2d 169, supra; Lamb-Weston v. Oregon Auto. Ins. Co., 219 Ore. 110, 130; but see Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N. J. 554, 564, supra [holding that the loss be apportioned equally].) It will, of course, be for the carriers to decide and arrange between themselves whether the one or the other of them—or, indeed, both jointly—should assume the various responsibilities involved in defending the allegedly negligent driver.
There being no question but that the defendant is obligated to assume a portion of the loss, even though the precise extent of its liability remains undetermined, it follows that the Appellate Division was wrong in denying the plaintiff summary judgment — at least on the issue of liability. Atlantic, however, presses the point, which it successfully urged in the Appellate Division, that a question of fact was presented which precludes the granting of the plaintiff’s motion.
It was Atlantic’s argument that under the law as it stood when the negligence action was settled-—as reflected in the decision of the Appellate Division in Dym v. Gordon (22 A D 2d 702) —the court would have been bound to apply the Vermont guest statute if the case had gone to trial, in consequence of which the injured guest could not have recovered against his host, Morton. Accordingly, the argument proceeds, Federal’s payment of damages in settlement of the guest’s injuries may have been gratuitous and, by that token, not binding upon the defendant. The contention lacks substance. The applicability of choice of law principles to guest statutes was hardly settled by the Appellate Division decision in Dym, and the existence of a decision of an intermediate appellate court at the time of the compromise is hardly sufficient to rebut the overwhelming probability that Federal agreed to the settlement, in good faith, in order to avoid the risk of litigation and a large verdict for the plaintiff should it later be held that New York law governed. There is, therefore, no warrant for the Appellate Division’s denial of the plaintiff’s motion for summary judgment insofar as liability is concerned. This leaves for further *80 determination, at nisi prius, only the question of the amount of the plaintiff’s loss which is to be shared by the defendant.[2]
The order appealed from should be reversed, without costs, and the motion for summary judgment granted. The case should be remitted to the Supreme Court for further proceedings in accordance with this opinion. The question certified should be answered in the negative.
Judges Scileppi, Bergan, Breitel and Jasen concur with Chief Judge Fuld ; Judge Burke dissents in part and votes to reverse and reinstate the order of Special Term on the dissenting opinion at the Appellate Division.
Order reversed, etc.

. See, e.g., General Ins. Co. v. Truck Ins. Exch. (242 Cal. App. 2d 419); Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co. (28 N. J. 554); Continental Cas. Co. v. Buckeye Union Cas. Co. (143 N. E. 2d 169 [Ohio]); Reetz v. Werch (8 Wis. 2d 388); Gilkey v. Andrew Weir Ins. Co. (291 F. 2d 132); FactoryMut. Ins. Co. v. Continental Cas. Co. (267 F. 2d 818); Oregon Auto. Ins. Co. v. United States Fid. & Guar. Co. (195 F. 2d 958); Continental Cas. Co. v. St. Paul Mercury F. & M. Ins. Co. (163 F. Supp. 325); but see, contra, Olson v. Herts Corp. (270 Minn. 223).

. Although the amount paid the injured party is known, there still remains to be ascertained the amount of the plaintiff’s counsel fees and other expenses in defending Morton.