858 F.2d 882
 UNITED STATES FIRE INSURANCE COMPANY, Plaintiff-Appellant,
Cross-Appellee,
v.
FEDERAL INSURANCE COMPANY, Aetna Insurance Company, John
Boyle Bell and Michael Bell, Defendants.
Appeal of FEDERAL INSURANCE COMPANY, Defendant-Appellee,
Cross-Appellant.
 Nos. 1140, 1224, Dockets 88-7087, 88-7131.
 United States Court of Appeals,
Second Circuit.
 Argued May 6, 1988.
Decided Sept. 30, 1988.
 
 Michael F. Close, Keene Valley, N.Y. (Barry, McTiernan & Moore, New York City, on the brief), for plaintiff-appellant-cross-appellee.
 Brian F. McDonough, New York City (William G. Becker, Jr., Shanley & Fisher, P.C., New York City, on the brief), for defendant-appellee-cross-appellant.
 Before LUMBARD, OAKES, and KEARSE, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 Plaintiff United States Fire Insurance Co. ("U.S. Fire") appeals from a final judgment entered in the United States District Court for the Southern District of New York following a bench trial before Bernard Newman, Judge,* awarding U.S. Fire $61,057.50 as reimbursement from defendant Federal Insurance Co. ("Federal") for one-sixth of an amount paid by U.S. Fire in settlement of a personal injury suit against their common insured, 670 F.Supp. 1191 (S.D.N.Y.1987). On appeal, U.S. Fire contends (1) that Federal should have been required to reimburse it for the entire amount of its settlement payments, and (2) that U.S. Fire was entitled to prejudgment interest. Federal cross-appeals, contending that it is not liable to U.S. Fire for any portion of the settlement. We affirm so much of the judgment as awarded U.S. Fire $61,057.50 and reverse so much of the judgment as denied it prejudgment interest on that amount.
 
 I. BACKGROUND
 
 2
 The following facts are not in dispute. In 1981, Michael Bell ("Bell"), the parties' common insured, was involved in an automobile accident. Bell was driving a car owned by John Boyle & Co. ("Boyle"), of which his father was president. A passenger in the car suffered personal injuries in the accident and brought an action for damages against Bell and Boyle. That action triggered disputes over the proper allocation of liability among the insurers who had issued four insurance policies, each of which covered Bell at the time of the accident: (1) a primary insurance policy issued by Federal to Boyle (the "business auto policy") in the amount of $500,000; (2) a primary insurance policy issued by Aetna Casualty & Surety Co. ("Aetna") to Bell's mother (the "personal auto policy"), also in the amount of $500,000; (3) a "Personal Excess Liability Policy" issued by Federal to Bell's father (the "excess policy") in the amount of $2,000,000; and (4) a "Commercial Comprehensive Catastrophe Liability Policy" issued by U.S. Fire to Boyle (the "catastrophe policy") in the amount of $10,000,000. As discussed in greater detail in part II.A. below, both Federal's excess policy and U.S. Fire's catastrophe policy contained provisions stating that the policy's coverage did not come into play until the insured had exhausted other available sources of insurance (the "exhaustion provisions").
 
 
 3
 The personal injury suit was settled for $1,366,345. Of this amount, Federal paid $500,000 under its business auto policy but nothing under its excess policy, and Aetna eventually contributed $500,000 under the personal auto policy. At issue on this appeal is the remaining $366,345, paid by U.S. Fire under its catastrophe policy. U.S. Fire commenced the present action against Federal in state court, from which it was removed to the district court.
 
 
 4
 To the extent pertinent here, U.S. Fire contended that its catastrophe policy was excess to both (a) the primary insurance policies and (b) Federal's excess policy, and that U.S. Fire was entitled to recover the entire $366,345 from Federal. Federal, on the other hand, contended that its excess policy was excess to both (a) the primary policies and (b) U.S. Fire's catastrophe policy, and that Federal was not liable for any part of the $366,345.
 
 
 5
 After a bench trial on stipulated facts, the district court held that U.S. Fire was entitled to recover one-sixth of the $366,345 from Federal. In an Opinion, Findings of Fact and Conclusions of Law dated October 7, 1987, the court found that since both U.S. Fire's catastrophe policy and Federal's excess policy purported to provide coverage only after all other available insurance had been exhausted, the two exhaustion provisions canceled each other out, and both U.S. Fire and Federal must contribute to the $366,345 portion of the settlement in proportion to their respective policy limits. Since the limits of the pertinent U.S. Fire and Federal policies were, respectively, $10,000,000 and $2,000,000, the court concluded that the ratio of their liability was 5 to 1 and ordered Federal to reimburse U.S. Fire for one-sixth of the $366,345 paid by U.S. Fire, or $61,057.50.
 
 
 6
 In a Memorandum dated November 24, 1987 ("Memorandum"), the court rejected U.S. Fire's request for prejudgment interest on the ground that N.Y.Civ.Prac.L. & R. ("CPLR") Sec. 5001(a) (McKinney 1963) allows an award of such interest only when the court has found a breach of contract. The court's rationale for concluding that U.S. Fire's action was not grounded in contract was as follows:
 
 
 7
 The New York Court of Appeals has often noted that there is a fundamental distinction between contribution and indemnity. See, e.g., McDermott v. City of New York, 50 N.Y.2d 211, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980); .... The right to contribution is not founded on, nor does it arise from, contract. It exists where ratable or proportional reimbursement is sought. Conversely, the right to indemnity springs from an express or implied contract in situations where full, not partial, reimbursement is sought....
 
 
 8
 In the underlying matter, a ratable distribution of insurance proceeds was ordered. Consequently, the parties' insurance action was founded upon the right of contribution and not indemnification.
 
 
 9
 Memorandum at 3-4 (other citations omitted).
 
 
 10
 These appeals followed.
 
 II. DISCUSSION
 
 11
 On its appeal, U.S. Fire urges principally that we review the insurance policies de novo and find that its catastrophe policy applied only after exhaustion of Federal's excess policy. Federal argues that the "clearly erroneous" standard of review set forth in Fed.R.Civ.P. 52(a) applies and that the district court erred in not inferring, from a disparity in the premiums charged for the two policies, that Federal's excess policy applied only after exhaustion of U.S. Fire's policy.
 
 
 12
 We note that though the events and the language of the pertinent insurance policies were stipulated in the district court, the proper inferences to be drawn from the language remained in dispute. Accordingly, the trial court's factual findings may not be overturned unless they are clearly erroneous. Anderson v. City of Bessemer City, 470 U.S. 564, 574-75, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985); Apex Oil Co. v. Vanguard Oil & Service Co., 760 F.2d 417 (2d Cir.1985). Under that standard of review, we conclude that the district court's findings that (1) both policies purported to be available only after other insurance was exhausted, and (2) neither policy expressly limited its liability to amounts in excess of amounts collectible under other excess policies, were not clearly erroneous, and we affirm the ruling that U.S. Fire and Federal must contribute ratably to so much of the settlement as was not paid by the primary insurers.
 
 
 13
 U.S. Fire also contends that it is entitled to prejudgment interest and that it should be awarded such interest on the entire amount that it paid in the settlement. To the extent that U.S. Fire seeks to recover from Federal interest on any sum greater than the sum awarded to it from Federal, its claim is frivolous. To the extent that U.S. Fire seeks prejudgment interest on the amount Federal is required to contribute, however, its argument has merit and we therefore reverse so much of the judgment as denied such interest.
 
 A. Liability
 
 14
 The general rule under New York law is that "[t]here is [a] well-settled equitable right to contribution, where there is concurrent insurance even in the absence of a policy provision for apportionment," Travelers Insurance Co. v. General Accident, Fire & Life Assurance Corp., 28 N.Y.2d 458, 463, 322 N.Y.S.2d 704, 706-07, 271 N.E.2d 542, 544-45 (1971), and that where each of the policies covering the risk "generally purports to be excess to the other, the excess coverage clauses are held to cancel out each other and each insurer contributes in proportion to its limit amount of insurance ...." Lumbermens Mutual Casualty Co. v. Allstate Insurance Co., 51 N.Y.2d 651, 655, 435 N.Y.S.2d 953, 955, 417 N.E.2d 66, 68 (1980) ("Lumbermens "); accord State Farm Fire & Casualty Co. v. LiMauro, 65 N.Y.2d 369, 373-74, 492 N.Y.S.2d 534, 538, 482 N.E.2d 13, 17 (1985) ("State Farm "). Thus, though it is possible for an insurer to provide "that it would, in effect, supply only the final tier of coverage," if other policies similarly purported to provide final-tier coverage, all such insurers would be required "to contribute ratably" toward any settlement. Lumbermens, 51 N.Y.2d at 656 n. *, 435 N.Y.S.2d at 956 n. *, 417 N.E.2d at 68 n. *. The general rule of ratable contribution is inapplicable, however, if it "would effectively deny and clearly distort the plain meaning of the terms of the policies." Id. at 655, 435 N.Y.S.2d at 955, 417 N.E.2d at 68.
 
 
 15
 The Lumbermens court determined that the general rule did not apply to three policies at issue before it because the plain language of each demonstrated that the respective parties to each insurance "contract did not bargain for a ratable contribution with any of the [other] policies." Id. at 656, 435 N.Y.S.2d at 955, 417 N.E.2d at 68; see id. at 655, 435 N.Y.S.2d at 955, 417 N.E.2d at 68. Rather, the court concluded that three tiers of coverage had been agreed to on the basis that (1) the first policy merely stated generally that it was excess to other available sources of insurance; (2) the second "was designed specifically to provide coverage in excess of that provided by [the first]," id.; (3) a clause in the second policy stating that the issuer "would not contribute with other collectible insurance 'other than insurance applying as excess to [its] limit of liability,' " id. at 656 n. *, 435 N.Y.S.2d at 955 n. *, 417 N.E.2d at 68 n. * (quoting policy), essentially "conceded the possibility that another policy could provide coverage in excess of its coverage," id. at 656, 435 N.Y.S.2d at 955, 417 N.E.2d at 68 (footnote omitted); and (4) the third policy "specifically provided coverage in excess of all other coverage available, including excess coverage," and the premiums for this policy "[p]resumably" reflected the agreement that it represented the final tier of coverage and would seldom be reached, id.
 
 
 16
 As to the last factor mentioned in Lumbermens, premium size may be an important factor in determining priority of coverage, see State Farm, 65 N.Y.2d at 378, 492 N.Y.S.2d at 541, 482 N.E.2d at 20 (declining to order ratable contribution in part because one policy provided $1,000,000 of coverage for a premium of $144 while the other provided only $100,000 to $300,000 of coverage for a premium of $119); but the analysis must consider whether premium disparity instead reflects disparities in the degree of risk covered, see Northbrook Excess and Surplus Insurance Co. v. Chubb Group, 113 A.D.2d 319, 325, 496 N.Y.S.2d 430, 433 (1st Dep't 1985) ("In evaluating the significance of the amount of the premium, it is clearly important to measure that premium against the [comprehensiveness of the] coverage provided by that policy."), aff'd mem., 67 N.Y.2d 1015, 503 N.Y.S.2d 317, 494 N.E.2d 448 (1986).
 
 
 17
 In the present case, the district court concluded that the general rule of ratable contribution applied, finding that neither the U.S. Fire catastrophe policy nor the Federal excess policy manifested a sufficiently clear intent that it would provide a higher tier of coverage than the other. Given the language of each policy's exhaustion provisions, this finding can hardly be termed clearly erroneous. First, each policy uses substantively indistinguishable terms to define its "retained limit," i.e., the amount of other insurance that must be exhausted before the policy comes into play. The U.S. Fire policy defines this amount, in pertinent part, as:
 
 
 18
 the total of the applicable limits of the underlying policies listed in Schedule A hereof, and the applicable limits of any other insurance collectible by the insured ....
 
 
 19
 The Federal excess policy defines its retained limit as:
 
 
 20
 the limit of liability of the primary insurance as it is shown in the Schedule hereof, or the actual limits of liability of any applicable primary or other insurance, whichever is greater ....
 
 
 21
 Each policy thus evinces the same broad general intent that its coverage is to be excess to all other coverage, as U.S. Fire refers to exhaustion of "underlying" policies and "any other insurance," while Federal refers to exhaustion of "primary" insurance and "other insurance"; but neither policy defines these terms in a way that plainly renders one broader than the other.
 
 
 22
 Further, the policies' "Other Insurance" clauses suggest that the two policies should be regarded as providing the same tier of coverage. The "Other Insurance" clause in U.S. Fire's policy states:
 
 
 23
 If other collectible insurance including other insurance with this company is available to the insured covering a loss also covered hereunder (except insurance purchased to apply in excess of the sum of the retained limit and the limit of liability hereunder) the insurance hereunder shall be in excess of and not contribute with, such other insurance.
 
 
 24
 The parallel clause in Federal's policy states:
 
 
 25
 The insurance provided by this policy shall be in excess of, and shall not contribute with, any other insurance (except insurance purchased to apply in excess of the sum of the retained limit and the limit of liability hereunder) available to the named insured ..., not only under any policy enumerated in the Schedule, but also under any other insurance available to the insured, and this insurance shall not apply until all such insurance is exhausted.
 
 
 26
 Both of these clauses refer broadly to exhaustion of "other ... available" insurance. Neither policy explicitly states, as did the third policy in Lumbermens, that it is excess to other "excess" insurance. Rather each is similar to the second policy at issue in Lumbermens, in that the two clauses contain an identically worded exception to the insurer's nonobligation to "contribute with" other insurance, that exception being for "insurance purchased to apply in excess of the sum of the retained limit and the limit of liability hereunder." The Lumbermens court characterized such a provision as one that "conceded the possibility that another policy could provide coverage in excess of its coverage." 51 N.Y.2d at 656, 435 N.Y.S.2d at 955, 417 N.E.2d at 68. Since each policy at issue here contains the same concession, and excepts other excess insurance from the category of insurance with which it is not obligated to contribute, the language of the two policies reveals no discernible difference with respect to their intended rank in the hierarchy of applicable insurance.
 
 
 27
 In sum, each of the two policies states generally that it is to be excess to "other" insurance, yet neither states specifically that it is to be excess to excess insurance, and each in effect concedes that a tier more remote may be provided. The district court's finding that the exhaustion provisions of the two policies offset each other is not clearly erroneous.
 
 
 28
 Federal argues that the disparate costs of the two policies should have led the district court to find that its policy, costing $144 annually for $2,000,000 of coverage, was intended to provide more remote coverage than that of U.S. Fire, which cost $7,500 for $10,000,000 of coverage. The court noted, however, that
 
 
 29
 U.S. Fire insured three corporations and provided for a variety of coverage including, inter alia, workmen's compensation, comprehensive general liability, advertising liability and products liability. The Federal excess policy covered two residential properties, one automobile and three licensed drivers.
 
 
 30
 The court found that the premium disparity reflected not different layers of coverage but rather significant differences in the number and types of risks covered. This finding is not clearly erroneous.
 
 
 31
 We conclude that the district court's findings that the two policies provided coverage at the same level may not be overturned, and we affirm the ruling that the two insurers are therefore required to contribute in proportion to their respective limit amounts of insurance.
 
 B. Prejudgment Interest
 
 32
 The availability of prejudgment interest is governed by CPLR Secs. 5001 and 5002 (McKinney 1963). The former deals with interest for the period prior to a jury verdict or the court's decision of the case; the latter deals with interest from the date of the verdict or decision to the date of judgment.
 
 
 33
 Section 5002 provides, in pertinent part, that "[i]nterest shall be recovered upon the total sum awarded, including interest to ... decision, in any action, from the date the ... decision was made to the date of entry of final judgment." There seems to be little question that the district court in the present case should have ordered Federal to pay U.S. Fire interest on the $61,057.50 for the postdecision-prejudgment period.
 
 
 34
 With respect to the predecision period, CPLR Sec. 5001(a) provides for interest, in pertinent part, as follows:
 
 
 35
 Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, ... except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.
 
 
 36
 The district court's denial of U.S. Fire's request for prejudgment interest under this section was apparently premised on its view that because there was no actual contract to which both U.S. Fire and Federal were parties, and because the court awarded U.S. Fire only partial reimbursement, U.S. Fire's claim against Federal should be treated as one for contribution among tortfeasors rather than one grounded in contract. We reject this analysis.
 
 
 37
 In the context of "apportionment of liability among joint tortfeasors," McDermott v. City of New York, 50 N.Y.2d 211, 216, 428 N.Y.S.2d 643, 645, 406 N.E.2d 460, 461 (1980) ("McDermott "), it is indeed established (a) that "[t]he right to contribution is not founded on nor does it arise from contract," and (b) that the term "indemnity," which is based on contract, express or implied, is used to describe only "full, not partial, reimbursement," id., 428 N.Y.S.2d at 646, 406 N.E.2d at 462.
 
 
 38
 Nonetheless, in the context of apportionment of liability among coinsurers, the term "contribution" is used as the equivalent of partial indemnification, and the existence vel non of that right depends on the rights reflected in the insurance contracts. Thus, a right of partial indemnification is implied by the court in order to avoid allowing one insurer a windfall in light of the existing insurance contracts. In Aetna Casualty & Surety Co. v. Merchants Mutual Insurance Co., 78 A.D.2d 176, 435 N.Y.S.2d 125 (3d Dep't 1980) ("Aetna Casualty "), for example, the appellate court reversed the dismissal of a suit brought to compel the defendant insurer to contribute to the cost of a settlement, ruling that the terms of the policy issued by the defendant gave the plaintiff insurer a cause of action based on a theory of "implied indemnification":
 
 
 39
 We hold that a cause of action based on a theory of implied indemnification exists in favor of the plaintiff against the defendant by virtue of the specific provisions of the policy of insurance issued by the defendant on the trailer.... [Both policies] insure the driver and both insurers must contribute to a judgment based on the negligence of the driver.
 
 
 40
 Id. at 178, 435 N.Y.S.2d at 127. Similarly, the analysis in Lumbermens, discussed in part II.A. above, and other court of appeals cases makes plain that an insurer's right to contribution does have its origin in contract, to wit, the contracts between the insured and the various insurers. See 51 N.Y.2d at 655, 435 N.Y.S.2d at 955, 417 N.E.2d at 68 ("The parties to this contract [i.e., the second-tier policy] did not bargain for ratable contributions"); id. at 656, 435 N.Y.S.2d at 955, 417 N.E.2d at 68 ("the parties to the Lumbermens contract [i.e., the third-tier policy] did not bargain for a ratable contribution with any of the [other] policies"); see also Federal Insurance Co. v. Atlantic National Insurance Co., 25 N.Y.2d 71, 77, 302 N.Y.S.2d 769, 773, 250 N.E.2d 193, 195 (1969) (the court "must give effect to the parties' private law as reflected in their binding contractual arrangement"); id. at 78-79, 302 N.Y.S.2d at 774, 250 N.E.2d at 196 ("[a]s both policies assumed the same risk, both were obligated to defend [the insured] in a suit brought against him and both must contribute, pro rata, toward payment of the cost of the settlement and legal fees and other expenses of the litigation"); Continental Casualty Co. v. Equitable Life Assurance Society of the United States, 52 N.Y.2d 228, 233-35, 437 N.Y.S.2d 279, 282, 418 N.E.2d 1298, 1301 (1981) (ratio of required contribution is measured by coinsurers' respective insurance contracts).
 
 
 41
 In the insurance context, therefore, where the insurance contracts reveal multiple coverage, the court exercises its equity powers to imply a contract between the coinsurers to contribute, and the proportion of their required contribution is grounded in the policy limits set forth in the contract of each insurer with the insured. Accordingly, we reject the district court's premise that U.S. Fire's claim against Federal was analogous to a claim for contribution between tortfeasors as to which predecision interest was barred.
 
 
 42
 Our conclusion that predecision interest was not barred, however, does not necessarily mean that U.S. Fire was entitled to it as a matter of law. Although Sec. 5001(a) requires an award of such interest as of right if a plaintiff receives his award "because of a breach of performance of a contract," it commits the matter of such interest to the discretion of the court when the "action [is] of an equitable nature." Although we have found no state cases directly in point, and although the implication of an insurer's right to contribution is an exercise of the court's equity powers, several factors persuade us that an insurer's contribution action should be viewed as a type of contract action in which the successful plaintiff is entitled to predecision interest as a matter of right.
 
 
 43
 First, though the recognition of a coinsurer's right of contribution, or partial indemnification, is an exercise of the court's equity powers, the contribution suit is nonetheless a quasi-contract action, which is an action at law. Thus, the Aetna Casualty court, in recognizing a right of contribution, stated,
 
 
 44
 "[c]onceptually, implied indemnification finds its roots in the principles of equity. It is nothing short of simple fairness to recognize that '[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity' (Restatement, Restitution, Sec. 76). To prevent unjust enrichment, courts have assumed the duty of placing the obligation where in equity it belongs,"
 
 
 45
 78 A.D.2d at 178, 435 N.Y.S.2d at 127 (quoting McDermott, 50 N.Y.2d at 216-17, 428 N.Y.S.2d at 646, 406 N.E.2d at 462); and the McDermott court noted that the vehicle through which the court remedies unjust enrichment is quasi contract. McDermott went on to observe that "quasi contract was a form adopted by common-law courts to incorporate the equitable principles of unjust enrichment. Thus, although remedies such as indemnity are derived from equitable notions, the action is and has been an action at law." 50 N.Y.2d at 217 n. 2, 428 N.Y.S.2d at 646 n. 2, 406 N.E.2d at 462 n. 2 (emphasis added).
 
 
 46
 Second, Sec. 5001(a)'s phrase "because of a breach of performance of a contract" appears to be sufficiently broad to encompass an insurer's recovery of contribution for two reasons. To begin with, such a recovery requires (a) the existence of a contract between the defendant and the insured and (b) nonpayment by the defendant to the insured of a sum called for by that contract. The defendant's nonpayment may easily be construed as a breach of performance of that contract, "because of" which the coinsurer is entitled to contribution. In addition, since the court implies the existence of a partial indemnification agreement between the coinsurers, the recovering insurer may be said to have recovered because of a breach of the implied contract. At least one New York court has recognized that a plaintiff who recovers for breach of a contract implied by the court is entitled to interest as of right under Sec. 5001(a). See Isaacs v. Incentive Systems, Inc., 52 A.D.2d 550, 551, 382 N.Y.S.2d 69, 70-71 (1st Dep't 1976) ("The sum awarded below being 'because of a breach of performance of a contract,' albeit a contract implied in law, plaintiff was properly awarded interest on the recovery. (CPLR 5001.)").
 
 
 47
 Third, the history of Sec. 5001(a) supports the conclusion that a plaintiff who recovers under an implied contract was meant to recover predecision interest as a matter of law. Section 5001(a)'s predecessor, Sec. 480 of the New York Civil Practice Act ("CPA"), provided in pertinent part as follows:
 
 
 48
 In every action wherein any sum of money shall be awarded by ... decision upon a cause of action for the enforcement of or based upon breach of performance of a contract, express or implied, interest shall be recovered upon the principal sum.
 
 
 49
 (Emphasis added.) Cases construing this provision tended "to include contracts implied in law and quasi-contracts under the general heading of implied contracts." 5 J. Weinstein, H. Korn & A. Miller, New York Civil Practice, p 5001.04, at 50-13 (1987); see, e.g., Employers' Liability Assurance Corp. v. Empire City Iron Works, Inc., 19 Misc.2d 963, 965, 187 N.Y.S.2d 425, 429 (Sup.Ct. Queens Co. 1959) ("Under [CPA Sec. 480], it matters not whether the contract arises by operation of law or by express agreement between the parties. Interest follows as a matter of course in either situation.") The Advisory Committee's note to the original draft of Sec. 5001(a) stated that the new language of Sec. 5001(a) was intended only as a simplification, not as a change. See 5 J. Weinstein, H. Korn & A. Miller, New York Civil Practice p 5001.04, at 50-12.
 
 
 50
 For all of these reasons, we conclude that U.S. Fire was entitled as a matter of law to predecision interest from Federal on the $61,057.50 awarded. Such interest should be computed from the date on which U.S. Fire made the settlement payment. As noted above, U.S. Fire was also entitled to interest from the date of decision to the date of entry of the judgment "upon the total sum awarded, including interest to ... decision." CPLR Sec. 5002.
 
 
 51
 We reverse so much of the judgment below as denied U.S. Fire prejudgment interest, and we remand for the calculation of such interest in accordance with the foregoing and for the entry of a new judgment that includes the award of such interest.
 
 CONCLUSION
 
 52
 The judgment of the district court is affirmed in part and reversed in part, and the matter is remanded for further proceedings in accordance with this opinion. Each party shall bear its own costs on these appeals.
 
 
 
 *
 The Honorable Bernard Newman, Senior Judge of the United States Court of International Trade, sitting by designation